# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:18-cv-00512-MR

| | |
|---|---|
| **LORETTA HAGANS GREENE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **ANDREW SAUL, Commissioner** ) | |
| **of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I. PROCEDURAL HISTORY

The Plaintiff, Loretta Hagans Greene ("Plaintiff"), filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of July 30, 2010. [Transcript ("T.") at 13, 33, 173]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 83, 94]. Upon Plaintiff's request, a hearing was held on August 7, 2017 before an Administrative Law Judge ("ALJ"). [T. at 30-59]. On August 21, 2017, the ALJ issued a written decision denying the Plaintiff benefits, finding

that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of July 30, 2010, through December 30, 2015, the date last insured. [T. at 18-29]. The Appeals Council denied the Plaintiff's request for review on July 22, 2018, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla

of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability.

3

20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular

and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fourth step and, in the alternative, at the fifth step.

5

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, July 30, 2010, through her date last insured, December 30, 2015. [T. at 13]. At step two, the ALJ found that the Plaintiff has severe impairments, including: fibromyalgia, depressive disorder, patella-femoral compartment osteoarthrosis of the right knee, ulnar neuropath of both elbows, carpal tunnel syndrome, degenerative disc disease, and post-traumatic stress disorder. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [T. at 16]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b). The [Plaintiff] can lift and carry, push and pull 20 pounds occasionally, and 10 pounds frequently. With normal breaks in an eight-hour day, she can sit for six hours, and stand and/or walk for six hours; and can tolerate frequent, but not constant, bilateral fingering. The [Plaintiff] can understand and remember simple instructions; can sustain attention for simple tasks; can interact in brief exchanges; and can adapt to minor workplace changes.

[T. at 18].

At step four, the ALJ identified Plaintiff's past relevant work as a doubling machine operator. [T. at 21]. The ALJ then found, based upon the

6

testimony of the VE, that the Plaintiff's past work did not require the performance of work-related activities precluded by the Plaintiff's RFC. [T. at 22]. The ALJ then proceeded to make alternative findings at the fifth step. [Id.]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including: garment steamer, inspector, and assembler of small products. [T. at 22-23]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from July 30, 2010, the alleged onset date, through December 30, 2015, the date last insured. [T. at 23].

## V.    DISCUSSION[1]

In this appeal, the Plaintiff contends that the ALJ failed to properly discuss and evaluate the evidence of record related to the Plaintiff's mental limitations, and that the ALJ failed to explain how he reconciled certain contradictory evidence with the mental limitations found in the Plaintiff's RFC. [See Doc. 13 at 3-25]. This incomplete analysis, the Plaintiff contends, led to an incomplete or inaccurate assessment of her abilities, which in turn

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

7

results in the frustration of meaningful review and in an unsubstantiated RFC. [Id.].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations require an in-depth review and analysis of the plaintiff's mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

8

impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E. The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a. The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p. Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The Paragraph B criteria include restrictions in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.[3] Id. The ALJ uses the special technique to "evaluate the severity of mental impairments …

---

[3] The Paragraph B criteria were recently amended. For claims filed on or after January 17, 2017, the new Paragraph B criteria include: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (as amended). In this case, the Plaintiff filed her application for disability insurance benefits before the amendment, however, the ALJ rendered his decision on August 21, 2017, and applied the new Paragraph B criteria.

9

when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).… If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b)(1). With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ failed to conduct any function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 16-22]. At step three, the ALJ decided that Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria[4] in listing 12.04 (depressive, bipolar and related disorders) or listing 12.06 (anxiety and obsessive-compulsive disorders). The ALJ based this on findings regarding Plaintiff's limitations and difficulties

---

[4] Paragraph B of these listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his or her functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).

relative to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [Id.]. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. <u>The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.</u> The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function[ ]analysis.

[T. at 18 (emphasis added)].

The ALJ found at step three that the Plaintiff suffers from moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence or pace; and moderate limitations in adapting or managing oneself. These findings indicate that there are limitations on Plaintiff's ability to carry out the areas of mental functioning listed in paragraph B. [T. at 17-18]. In formulating the Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated to any actual functional limitations. It appears the ALJ sought to account for Plaintiff's "moderate limitations" in the four areas of mental functioning by finding in the RFC that the Plaintiff:

> [C]an understand and remember simple instructions; can sustain attention for simple tasks; can interact in brief exchanges; and can adapt to minor workplace changes.

[T. at 18]. This, however, begs the question. The ALJ failed to explain how the Plaintiff's mental impairments impact the Plaintiff's mental *functioning* in such areas as activities of daily living; social functioning; concentration, persistence, and pace; as well as in episodes of decompensation. While the ALJ determined what functions he believes the Plaintiff can perform, "his opinion is sorely lacking in the analysis needed for [the Court] to review meaningfully those conclusions." Mascio, 780 F.3d at 636-37. Further, while the ALJ's decision recites certain evidence of record, the ALJ failed to describe "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; Mascio, 780 F.3d at 636. Moreover, although the ALJ concluded that the Plaintiff can perform certain functions, "he said nothing about [the Plaintiff's] ability to perform them for a full work day." Id. at 637.[5]

---

[5] Similarly, in weighing the medical opinions of record, the ALJ gave "great weight" to the reconsideration level State Agency psychological consultant's opinion, with the caveat that the opinion was rendered "us[ing] the old [paragraph] B criteria" but that some of the "analysis is pertinent to the new [paragraph] B criteria." [T. at 21]. The ALJ never explains, however, what portions of the analysis are pertinent.

A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted).

As such, the Court must remand the case on this ground so that the ALJ may comply with the proper procedure for assessing the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636; Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 659 & 662 (4th Cir. 2017) ("[T]he weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be harmless because such failure prevents, or at least substantially hinders, judicial review.").

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ must perform a function-by-function analysis of the Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). The ALJ's analysis should include a narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, accounting for the Plaintiff's limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself, if any, including an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect his ability to perform work-related functions, but also his ability to perform them for a full workday).

In light of this decision, the Plaintiff's other assignment of error need not be addressed at this time but may be addressed by her on remand.

# ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] is **GRANTED** and the Defendant's Motion for Judgment for Summary Judgment [Doc. 14] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: January 15, 2020

Martin Reidinger
United States District Judge